■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SEAN D. CLAYTON, Appellant. [868 NYS2d 303]—

Contrary to the defendant's contention, the hearing court properly denied that branch of his omnibus motion which was to suppress physical evidence recovered from his person at the police station after he was arrested during a vehicle stop. The credibility determinations of a hearing court are entitled to great deference on appeal and will not be disturbed unless clearly unsupported by the record (*see People v Henderson,* 26 AD3d 444, 445 [2006]; *People v Santiago,* 18 AD3d 675, 675-676 [2005]). According to the testimony presented at the suppression hearing, which the hearing court fully credited, City of

Poughkeepsie police officers stopped the defendant's vehicle after observing several traffic violations and were advised by the defendant, and by police dispatch over the radio, that the defendant's driver's license was suspended. Based on this information, the officers had probable cause to arrest the defendant (*see* Vehicle and Traffic Law § 511 [1]; *People v Davis,* 32 AD3d 445 [2006]; *People v Mitchell,* 303 AD2d 422, 423 [2003]; *People v Buckmon,* 293 AD2d 623, 623-624 [2002]; *People v Tavarez,* 277 AD2d 260 [2000]; *People v Lester,* 232 AD2d 427, 428 [1996]), and they were authorized to frisk him incident to that lawful arrest (*see People v Troiano,* 35 NY2d 476, 478 [1974]).

Further, the record supports the hearing court's determination that the police officers were justified in conducting a visual body cavity search of the defendant once he had been transported to the police station and that this search was conducted in a reasonable manner. "[T]he Fourth Amendment does not prohibit a visual cavity inspection if the police have at least a reasonable suspicion to believe that contraband, evidence or a weapon is hidden inside the arrestee's body" (*People v Hall,* 10 NY3d 303, 309 [2008], *cert denied* 555 US —, 129 S Ct 159 [2008]). To perform a visual body cavity search, the police must have a "specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity," although they are allowed to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person" (*id.* at 311 [internal quotation marks omitted]). A visual cavity search must be conducted reasonably, and "the reasonableness of the manner in which the search is conducted should be evaluated by reference to where, how and by whom the inspection occurred (*e.g.,* usually in a private location, by a person of the same gender and without causing the arrestee to suffer further undue humiliation)" (*id.*).

At the suppression hearing, one of the police officers involved in the vehicle stop and the subsequent search at the police station (hereinafter the officer) testified that shortly before the stop, he had observed the defendant at an "active drug location" and that the defendant's conduct had been consistent with prior narcotics activity observed by the police at that location. When the officer frisked the defendant during the vehicle stop, he detected a small hard object under the defendant's clothing near his tail bone which the defendant refused to identify. Based on the officer's experience and training, he suspected that this object was narcotics. Additionally, the officer

testified that the defendant had a history of secreting contraband in his rectum and that when he was transported to the police station, he had been "wiggling around" in the police car and placing his hands in the area where the officer had felt the hard object during the frisk. This testimony established that the police had a specific, articulable factual basis supporting a reasonable suspicion to believe that the defendant had secreted evidence inside a body cavity which justified the visual cavity search (*id.* at 312). Moreover, the visual cavity search was conducted in a reasonable manner because it was performed in an empty cell block by officers of the same gender as the defendant (*id.*).

Finally, the defendant's contention that the police officers unlawfully seized evidence which they observed during the visual body cavity search is without merit. "[T]he removal of an object protruding from a body cavity, regardless of whether any insertion into the body cavity is necessary . . . cannot be accomplished without a warrant unless exigent circumstances reasonably prevent the police from seeking prior judicial authorization" (*id.* at 311; *see People v More,* 97 NY2d 209, 212-214 [2002]). The suppression hearing testimony established that, upon performing the visual body cavity search, police officers observed a plastic bag containing a white substance located between the cheeks of the defendant's buttocks but not inserted into a body cavity. Accordingly, the police were not required to obtain a warrant before removing the item from the outer surface of the defendant's body (*cf. People v Hall,* 10 NY3d at 312-313; *People v More,* 97 NY2d at 214).

Accordingly, the hearing court properly denied that branch of the defendant's omnibus motion which was to suppress physical evidence. Ritter, J.P., Florio, Miller and Dillon, JJ., concur.