*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 12, 2015                    106031
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

JAMES E. COGDELL,
                        Appellant.
_____


Calendar Date:  January 6, 2015

Before:  Garry, J.P., Egan Jr., Lynch and Clark, JJ.

_____


        Tracy A. Donovan-Laughlin, Cherry Valley, for appellant.

        Weeden A. Wetmore, District Attorney, Elmira (John R. Thweatt of counsel), for respondent.

_____


Egan Jr., J.

        Appeal from a judgment of the County Court of Chemung County (Hayden, J.), rendered March 1, 2013, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the third degree.

        In March 2012, members of the Elmira Police Department's drug unit began conducting electronic surveillance of an individual believed to be dealing crack cocaine in Chemung County.  On May 13, 2012, one of the officers intercepted certain phone calls between the suspected dealer and another individual; based upon the use of various coded words and phrases during those phone calls, the officer believed that a drug deal was being arranged.  In response, the officer alerted the surveillance team that was monitoring a location frequented by

the alleged dealer.  Shortly thereafter, an individual – later identified as defendant – approached the residence in question on a bicycle and went inside.  Approximately 20 minutes later, defendant exited the residence and rode away on his bicycle, cutting through the parking lot of a local Rite Aid drug store.

Shortly thereafter, defendant was stopped by police – ostensibly for riding his bicycle in violation of various provisions of the Vehicle and Traffic Law.  In response to police questioning, defendant began to "fidget[]" and "perspire heavily," appeared to be "very, very nervous" and was "shaking so uncontrollably" that he had difficulty producing his identification.  Although defendant claimed to have just purchased medication at Rite Aid, the officer in question knew that this was untrue, as he had personally observed defendant pass through the parking lot without stopping at the store.  When asked whether he was in possession of any illegal items, defendant responded negatively and invited the officer to "check him."  Although the ensuing pat-down frisk did not disclose any drugs or weapons, the officer did retrieve a large jar of Vaseline, which – in his experience – often was used by individuals to aid in secreting narcotics on their person.  After defendant falsely denied prior contact with the Elmira Police Department, he was asked to accompany the officers to the police station.  At this point, defendant fled the scene and, after a short foot chase, was apprehended and taken into custody.

Once at the police station, officers performed a strip search of defendant, which did not yield any drugs.  When officers attempted to visually inspect defendant's rectal area, defendant was noncompliant and complained that his chest hurt.  Defendant then was transported to a local hospital for evaluation, but was uncooperative with the medical staff.  While there, and following discussions with various law enforcement officials, defendant retrieved a plastic bag of cocaine from his rectum, turned it over to an officer and then left the hospital by himself.

Defendant thereafter was charged in a single-count indictment with criminal possession of a controlled substance in the third degree.  Following the denial of his motion to suppress

the 26.8 grams of cocaine recovered from his person, defendant pleaded guilty as charged and thereafter was sentenced to a prison term of four years followed by two years of postrelease supervision.  Defendant now appeals, contending that County Court erred in denying his suppression motion.

As a preliminary matter, inasmuch as the record does not reflect that defendant waived his right to appeal (compare People v Guyette, 121 AD3d 1430, 1431 [2014]), and because defendant did not enter his plea until after County Court denied his request to suppress the drugs in question (compare People v Morrison, 106 AD3d 1201, 1202 [2013], lv denied 23 NY3d 1065 [2014]), defendant's challenge to County Court's denial of his suppression motion survives his guilty plea (see CPL 710.70 [2]; People v Rasul, 121 AD3d 1413, 1415 n [2014]).  Turning to the merits, the principles governing strip searches and body cavity examinations are set forth in People v Hall (10 NY3d 303 [2008], cert denied 555 US 938 [2008]).  Insofar as is relevant here, "a strip search must be founded on a reasonable suspicion that the arrestee is concealing evidence underneath clothing and the search must be conducted in a reasonable manner.  To advance to . . . a visual cavity inspection, the police must have a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee [has] secreted evidence inside a body cavity and the [ensuing] visual inspection must be conducted reasonably" (id. at 310-311; see People v Mothersell, 14 NY3d 358, 366-367 [2010]; People v Hunter, 73 AD3d 1279, 1280 [2010]; People v Clayton, 57 AD3d 557, 558 [2008], lv denied 12 NY3d 852 [2009]).  Although the police cannot routinely subject all drug arrestees to visual cavity inspections, the police are permitted — in the context of formulating the particularized factual basis required for such inspections — "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person" (People v Hall, 10 NY3d at 311 [internal quotation marks and citation omitted]; accord People v Mothersell, 14 NY3d at 366-367; People v Clayton, 57 AD3d at 558).

Here, the evidence adduced at the suppression hearing revealed that the police intercepted a series of phone calls

wherein the suspected dealer and another individual – employing coded words and phrases that had specific meanings within the drug trade – discussed what the officers believed – based upon their training and experience – to be the sale of a specific quantity of drugs at a particular location (see People v Tambe, 71 NY2d 492, 501 [1988]; People v Baker, 174 AD2d 815, 816-817 [1991], lv denied 78 NY2d 920 [1991]; cf. People v Browning, 117 AD3d 1471, 1471 [2014], lv denied 23 NY3d 1060 [2014]).  An individual, later identified as defendant, thereafter was seen entering and leaving the address discussed in the intercepted phone calls – a residence where the suspected dealer had been "hanging out and selling" drugs.  Upon being approached by the police, defendant was nervous, fidgety and shaking uncontrollably and provided false information regarding both his recent whereabouts and his prior contact with the local police department (see People v Anderson, 104 AD3d 968, 971 [2013], lvs denied 21 NY3d 1013, 1016 [2013]; People v Walker, 27 AD3d 899, 901 [2006], lv denied 7 NY3d 764 [2006]; People v Kelley, 306 AD2d 699, 700 [2003], lv denied 1 NY3d 598 [2004]).  Although the pat-down frisk failed to yield any drugs, a large jar of Vaseline was found on defendant's person, the use of which – according to testimony adduced at the hearing – is a "common practice for people involved in [the] narcotics trade" when attempting to secrete drugs on their person (see People v Wright, 283 AD2d 712, 714 [2001], lv denied 96 NY2d 926 [2001]).  Based upon the contents of the subject phone calls and defendant's subsequent presence at a location known for drug sales, as well as defendant's documented demeanor, the false information that he provided and the discovery of the jar of Vaseline, the officers in question reasonably suspected that defendant had secreted drugs on his person.  When they attempted to perform a visual cavity inspection, however, defendant essentially was noncompliant and began complaining of chest pains – a tactic that defendant previously had employed when interacting with law enforcement officials.

The foregoing evidence, in our view, both provided the reasonable suspicion necessary for the initial strip search of defendant and furnished the "specific, articulable factual basis" (People v Hall, 10 NY3d at 311) required in order to undertake the subsequent visual cavity inspection of his person (compare

People v Gonzalez, 57 AD3d 1220, 1221-1222 [2008]).  We also are satisfied that this visual cavity inspection was conducted in a reasonable manner, i.e., in a private room with only male officers present.  Finally, inasmuch as the record reflects that defendant himself removed and turned over the drugs in question, no violation of defendant's Fourth Amendment rights occurred (see People v Hunter, 73 AD3d at 1281).  Accordingly, we discern no basis upon which to disturb County Court's denial of defendant's suppression motion.

Garry, J.P., Lynch and Clark, JJ., concur.


ORDERED that the judgment is affirmed.



ENTER:

Robert D. Mayberger
Clerk of the Court