This opinion is uncorrected and subject to revision before publication in the New York Reports.
-----------------------------------------------------------------

No. 68
The People &c.,
          Respondent,
     v.
Jafari Lamont,
          Appellant.

Janet C. Somes, for appellant.
Leah Mervine, for respondent.

RIVERA, J.:

Defendant Jafari Lamont challenges his conviction for two counts of attempted robbery in the second degree on the basis that the evidence was legally insufficient to establish he had the specific intent to steal.  We conclude that defendant's conduct and the surrounding circumstances provided legally sufficient evidence of the requisite intent to support

- 1 -

defendant's conviction.

According to the undisputed evidence at defendant's nonjury trial, at approximately 6:30 am, before the morning business hours, defendant and an accomplice appeared armed and masked at the rear door of a Wendy's fast-food establishment. The two lone employees who were preparing to open heard loud knocking, and one of them checked the security camera and saw defendant and his accomplice outside the back, knocking on the door. The employee did not let the two men in, but instead called his supervisor and 911.

A police officer responded in a marked patrol car, and as he pulled up with his car lights shining on the back of the Wendy's he saw two men hiding behind some stacked up crates. Upon seeing the car lights, defendant and his accomplice ran in different directions, with defendant running towards the officer.

The officer saw defendant dressed in dark blue clothing, wearing a black knit hat, black gloves and a black mask over his face, and observed defendant carrying what appeared to be a black handgun. When the officer drew his weapon, defendant ran towards the nearby highway. The officer followed in his car and later tracked defendant on foot, at which point a K-9 officer responded to the first officer's call for assistance. During the chase, the officers recovered a black knit hat and a black glove. When the officers eventually caught up with defendant they found him hiding between two buildings, and in possession of a backpack

which contained a pair of green, black and yellow gloves.

A subsequent search in the vicinity of the Wendy's led police to discover two BB guns.[1]  The police found one about 10 feet from the establishment's rear door, near where the first officer initially spotted defendant.  The police recovered the other from defendant's car, which the police found parked in a lot about 50 feet away from the Wendy's.

The People charged defendant with two counts of attempted robbery in the second degree (Penal Law §§ 110.00, 160.10 [1] and Penal Law §§ 110.00, 160.10 [2] [b]) and one count of attempted burglary in the second degree (Penal Law §§ 110.00, 140.25 [1] [d]).  At trial, defendant stipulated to the introduction into evidence of footage from the security camera, which showed the two masked men looking in and knocking on the Wendy's rear door, while holding what appeared to be guns.  He further stipulated that he was one of the masked men and that he was the person who ran towards the officer and who was later apprehended by the police.

In addition to the police testimony, the People relied on statements from the two coworkers and the supervisor who were on the morning shift the day of the incident.  These individuals testified that they did not recognize defendant's name, and that

---

[1]Although the police officer testified that the gun found in the defendant's car was a pellet gun, the parties' stipulation referred to the two guns "found at or near the scene" as BB guns. Therefore, we refer to the two guns accordingly.

the Wendy's was closed when defendant attempted to enter.  They also confirmed what was obvious from the security footage, that defendant and his accomplice were carrying what appeared to be firearms, and wore masks and gloves.

County Court convicted defendant of both the attempted robbery counts and acquitted him of attempted burglary.  A majority of the Appellate Division affirmed, concluding, as relevant to this appeal, that there was legally sufficient evidence to support defendant's conviction on the robbery counts (People v Lamont, 113 AD3d 1069 [4th Dept 2014]).  Two Justices dissented, arguing that the evidence was insufficient to establish beyond a reasonable doubt that defendant had the specific intent to steal, as required for attempted robbery.  A Justice of the Appellate Division granted defendant leave to appeal (22 NY3d 1160).  We now affirm.

On appeal to us, the entirety of defendant's challenge to his attempted robbery conviction is his allegation that the evidence was legally insufficient to establish the requisite intent to steal.  He contends that while the evidence may establish what appears to be some type of attempted criminal behavior, it does not support a valid inference that defendant intended to steal.  The People respond that defendant's intent to commit robbery is established by defendant's conduct and the surrounding circumstances.

The law is well-established that "[a] verdict is

legally sufficient if there is any valid line of reasoning and permissible inferences that could lead a rational person to conclude that every element of the charged crime has been proven beyond a reasonable doubt" (People v Delamota, 18 NY3d 107, 107). Where the defendant has been convicted, "[t]he evidence must be viewed in the light most favorable to the People," recognizing that "the People are entitled to all reasonable evidentiary inferences" (Delamota, 18 NY3d at 113). As this Court has recognized in the past, "[t]he element of intent is rarely proved 'by an explicit expression of culpability by the perpetrator'; and 'competing inferences to be drawn regarding the defendant's intent, if not unreasonable, are the exclusive domain of the finders of fact, not to be disturbed' by us" (People v Bueno, 18 NY3d 160, 169 [2011], citing People v Barnes, 50 NY2d 375, 381 [1980]).

On the record before us, we agree that the evidence was sufficient for a rational finder of fact to find defendant guilty of two counts of attempted second degree robbery. "A person is guilty of an attempt to commit a crime when, with the intent to commit a crime, [the person] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). "Essentially, then, an attempt is an act done with an intent to commit some other crime" (People v Bracey, 41 NY2d 296, 299 [1977], citing People v Moran, 123 NY 254, 257 [1890]). Here, the attempted crime is second degree robbery, which is

established when a person "forcibly steals property" and "is aided by another person actually present" or "displays what appears to be a ... firearm" (Penal Law §§ 160.10 [1], [2] [b]). A person "forcibly steals" when the person "uses or threatens the immediate use of physical force upon another person for the purpose of . . . compelling the owner of such property or another person to deliver up the property" (Penal Law § 160.00 [2]).  The requisite mental state for robbery is the "intent to permanently deprive the owner of the property" (People v Miller, 87 NY2d 211, 217 [1995]). Thus, the People had to prove beyond a reasonable doubt that defendant intended to forcibly steal property from an employee at the Wendy's by threat or use of physical force.

Even absent direct evidence of intent, a conviction may be sustained where sufficient evidence exists to infer the requisite intent from the defendant's conduct and the surrounding circumstances (People v Rodriguez, 17 NY3d 486, 489 [2011], citing Bracey, 41 NY2d at 301).  As a practical matter, circumstantial evidence of intent is often essential to prosecution for an attempted crime because, as this Court is acutely aware, such evidence "'may be the only way of proving intent in the typical case' of criminal attempt" (Bracey, 41 NY2d at 301).

Turning to the specific facts of defendant's case, we conclude that there is sufficient circumstantial evidence based on defendant's appearance and conduct, and the surrounding events

to support an inference that defendant intended to commit second degree robbery.  With respect to his appearance, defendant and his accomplice were dressed and equipped for criminal acts involving force and threatening behavior in furtherance of a robbery.  They wore masks and gloves to enhance their criminal persona and avoid identification by facial recognition or fingerprint verification, and they carried what appeared to be handguns.  In addition, defendant was apprehended carrying a backpack, which provided a convenient means to carry stolen property and which contained some additional gloves.

The conduct of defendant and his accomplice further evinced an intent to burglarize the Wendy's.  The men were knocking loudly on the commercial establishment's rear door, an entry point not generally used by the public.  They appeared early in the morning, before regular hours, with no apparent lawful purpose, and while two employees were alone and busy preparing to open for business.  Moreover, defendant planned his escape in advance by parking his car in the nearby lot.  This apparent familiarity with the area and the employees' arrival time, and the attempted entry through a locked back door and the availability of a get away vehicle suggests that defendant and his accomplice had previously assessed the establishment's vulnerability to robbery.  Therefore, on this record, the finder of facts had ample evidence to conclude that defendant's dress, conduct and the surrounding circumstances are commonly associated

with the crime of robbery.

Defendant contends that the evidence was equivocal because it is just as likely to suggest some other criminal act, such as assault, rape, and murder. The People respond that the evidence belies defendant's argument that the facts support reasonable inferences of some alternative criminal intent. Defendant and the People both cite to People v Bracey in support of their respective arguments. We find the People's argument persuasive and agree that, in accordance with Brady, the evidence supports the inference that defendant intended to commit robbery, rather than some other crime.

In Bracey, two defendants entered a store carrying a gun concealed in a bag, looked around, made a token purchase, and left. One defendant then drove the car -- which had its license plates removed -- around the block and parked it down the street. The other defendant re-entered the store with his gun drawn. At that moment, the police arrived in response to an earlier call from the store clerk who had found defendants previous behavior suspicious, and both defendants were eventually arrested. This Court upheld defendants' convictions for robbery in the second degree, noting that "intent may be inferred from the defendant's conduct and the surrounding circumstances" (see Bracey, 41 NY2d at 302). Although the Court noted that the act of walking into a store with a gun in hand "does not unequivocally establish that [defendants] intended to commit a robbery," the Court ultimately

concluded that defendants' "conduct obviously fit[] a pattern common to robberies" (id.).

Here, the actions of the defendant and his accomplice, and the circumstances of the incident do not comport easily with a crime other than robbery. Notably, the coworkers and the supervisor testified they did not know defendant's name, thus discounting the possibility that defendant's aim was to commit some other crime more commonly associated with a specific target. Further, defendant's use of a BB gun supports an inference of intent to forcibly steal rather than an intent to commit murder. On light of this record, it would require speculation to interpret the evidence as defendant suggests (see Bracey, 41 NY2d 296). Therefore, the trier of fact was entitled to conclude that it was not a reasonable possibility under the circumstances to find that defendant intended some criminal act other than robbery.

That the underlying facts reveal a somewhat different pattern of criminal conduct from the one this Court identified as common to the robbery pursued by defendants in Bracey means only that the pattern followed by defendant and his accomplice here reflects the characteristics and features of the robbery they attempted to commit. In other words, the conduct in each case reveals a pattern designed for the circumstances attendant to the specific crime, and provides a factual basis to infer the intent to commit robbery, albeit robbery of a particular nature.

In Bracey, the acts of entering and exiting the premises, initially concealing the weapon while inside the store and before the actual robbery, and riding around the immediate area, evinced the defendants' efforts to assess the scene and any potential problems before conducting the crime.  Those facts were sufficient to draw an inference of defendants' intent to rob the store in the middle of the day, in open view to the general public.

In contrast, here there was evidence that defendant, who was unknown to any of the employees present that morning, and had no apparent business at Wendy's, nevertheless showed up masked and armed, carrying a backpack, seeking entry at 6:30 am through a locked rear door not used by the public, with an escape vehicle conveniently parked nearby.  This fit the pattern common to an early morning robbery of a commercial establishment and was sufficient to support the inference that defendant intended to steal.

Accordingly, the Appellate Division order should be affirmed.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order affirmed.  Opinion by Judge Rivera.  Chief Judge Lippman and Judges Read, Pigott, Abdus-Salaam and Stein concur.  Judge Fahey took no part.

Decided May 14, 2015