McCarthy, J.P.
Appeal from a judgment of the County Court of Otsego County (Burns, J.), rendered February 20, 2015, upon a verdict convicting defendant of the crimes of attempted robbery in the first degree and conspiracy in the fourth degree.
On November 14, 2013, defendant and codefendant Victor Deleon, as well as Jordan Krone, Sabra Dayton and Alan Stay, devised a plan to rob two drug dealers of heroin. As a result of these and subsequent events, defendant was indicted on charges of attempted robbery in the first degree and conspiracy in the fourth degree. Thereafter, defendant moved to, among other things, dismiss the indictment as facially defective, contending, among other things, that the charge of conspiracy in the fourth degree failed to allege that defendant committed an overt act in furtherance of the conspiracy. The People opposed defendant’s motion in part, conceded that count 2 failed to allege an overt act, which rendered the count defective, and cross-moved to amend the indictment to remedy that defect. County Court, among other things, granted the People’s cross motion to amend the indictment. Following a jury trial, defendant was convicted as charged. Thereafter, defendant was sentenced, as a second felony offender, to 15 years in prison with five years of postrelease supervision for attempted robbery in the first degree and 2 to 4 years in prison for conspiracy in the fourth degree, with the sentences to run consecutively. Defendant now appeals.
County Court erred in denying that part of defendant’s motion that sought to dismiss count 2 of the indictment based on the failure to allege an overt act in furtherance of the alleged conspiracy. As the People conceded, both at trial and now, count 2 of the indictment was defective inasmuch as it failed to allege the commission of an overt act in furtherance of the conspiracy as required by Penal Law § 105.20 (see CPL 200.50 [7] [a]; 200.70 [2] [a], [b]). Given that “[a]n indictment may not be amended in any respect . . . for the purpose of curing: (a) [a] failure ... to charge or state an offense; or (b) “ [Regal insuffi *1158 ciency of the factual allegations” (CPL 200.70 [2]), County Court had no authority to grant the People’s motion to amend the indictment to allege an overt act. Moreover, the People’s contention that defendant consented to the amendment is directly contradicted by the fact that defendant specifically argued that the proper remedy for the People’s failure was dismissal of count 2 of the indictment. Accordingly, as count 2 was jurisdictionally defective and not subject to amendment, we reverse the conviction for conspiracy in the fourth degree and the sentence imposed thereon (see CPL 200.50 [7] [a]; 200.70 [2] [a], [b]; People v Dreyden, 15 NY3d 100, 103 [2010]; People v Grays, 121 AD3d 1178, 1179 [2014]; People v Boula, 106 AD3d 1371, 1372 [2013], lv denied 21 NY3d 1040 [2013]).
Next, defendant contends that the attempted robbery in the first degree conviction is against the weight of the evidence. More specifically, he argues that the proof fell short of establishing that he had the intent to commit the robbery and that he came dangerously near to doing so. A conviction of attempted robbery in the first degree requires the People to prove that, with the intent to forcibly steal property, the defendant attempted to do so and was aided by another person who was present, and that the defendant or another participant was armed with a deadly weapon (see Penal Law §§ 110.00, 160.15 [2]). “In order to constitute an attempt, the defendant’s conduct must have passed the stage of mere intent or mere preparation to commit a crime” (People v Naradzay, 11 NY3d 460, 466 [2008] [internal quotation marks and citation omitted]). “In other words, the defendant must have engaged in conduct that came dangerously near commission of the completed crime” (id. [internal quotation marks and citations omitted]; see People v Ryder, 146 AD3d 1022, 1024 [2017]). Moreover, a defendant’s “intent can ... be inferred from the defendant’s conduct and the surrounding circumstances” (People v Bracey, 41 NY2d 296, 301 [1977] [internal quotation marks and citation omitted]; see People v Lamont, 25 NY3d 315, 318-319 [2015]).
A variety of testimony, including defendant’s, established that, in November 2014, defendant met with Deleon, Krone, Dayton and Stay at a hotel and they proceeded to jointly devise a plan to rob the drug dealers of their heroin. The plan included the premise that defendant would pose as a drug purchaser, and there was some testimony that the specific plan would be that, after meeting with the drug dealers, defendant would explain that he needed to secure money from his car, and that he would thereafter return with Deleon and take the drugs at gunpoint. According to defendant,, at some point during the *1159 planning, he learned that Krone was a confidential informant (hereinafter Cl), and he thereafter abandoned the plan to rob the drug dealers in favor of a plan to proceed to buy drugs from the dealers in a manner consistent with the arrangement that they had previously made with the dealers as a premise for luring them into a robbery. Defendant further explained that he nonetheless took his handgun to the meeting with the drug dealers at Krone’s home. Deleon remained outside with a shotgun. Defendant further explained that, before he went into the home, he told Deleon to “make sure he had [defendant’s] back.” A neighbor testified that, around this time, he observed a male walking stiff-legged and holding his right side in a manner that suggested that he had a firearm. The neighbor contacted law enforcement, who arrived and eventually detained Deleon.
Meanwhile, and according to Krone, defendant, with a handgun in his waistband, arrived at his home, where the drug dealers were waiting. Krone explained that the drug dealers “noticed that something wasn’t right,” and began asking questions of defendant. According to Krone, the drug dealers had been misinformed, as a part of the robbery plan, that defendant was a college student, and when they began asking specific questions about this and other subjects, defendant began “stumbling over his words” and “didn’t have a lot of answers.” Krone further explained that the drug dealers did not have the drugs with them in the house at that point and that his impression was that defendant “could tell that things weren’t going exactly the way that he had planned them out to go.” According to Krone, at that point, defendant removed the firearm from his waistband, took out its clip, placed the firearm on the floor and informed the drug dealers that he did not want to get robbed. Thereafter, the drug dealers brought the drugs into the home. Eventually, defendant left, taking the handgun and stating that he needed to secure more funds and then would return to purchase the drugs. Defendant did not return. According to defendant’s own testimony, he was unable to reach Deleon by phone after he left Krone’s home, and he soon realized that the police had been called to the area. He disposed of his handgun in a nearby flower pot and left the scene.
Accordingly, uncontested evidence established that defendant had specifically formed an intent to rob the drug dealers and had entered Krone’s apartment with a handgun while Deleon remained outside with a shotgun. Thus, defendant and Deleon were “equipped for criminal acts involving force and *1160 threatening behavior in furtherance of a robbery” (People v Lamont, 25 NY3d at 320). Further evidence established that defendant only unloaded and parted with his handgun after he struggled to answer questions posed by the drug dealers, and one could reasonably infer that, by that point, defendant had realized the drugs were not in the house. After the drug dealers brought drugs into the house, defendant eventually left, giving the excuse that he needed to obtain more money — the excuse that other testimony had established was contemplated as a part of the plan to return with Deleon and commit the robbery. From this circumstantial evidence that defendant continued to conduct himself in accordance with the robbery plan previously formulated, the jury could reasonably infer that defendant continued to have the intention to rob the drug dealers as he entered the home and interacted with its occupants, and moreover that he engaged in conduct that came dangerously near the commission of robbery in the first degree. Further, the jury clearly found incredible defendant’s explanation that, upon learning that Krone was a Cl, defendant decided to abandon the plan to rob the drug dealers in favor of a plan to purchase drugs while in the company of an individual that defendant knew to be a Cl. Deferring to the jury’s credibility determinations, we find that defendant’s conviction for attempted robbery in the first degree was not against the weight of the evidence (see People v Guy, 93 AD3d 877, 881 [2012], lv denied 19 NY3d 961 [2012]; People v Snow, 303 AD2d 255, 255 [2003], lv denied 99 NY2d 658 [2003]; People v Colp, 147 AD2d 964, 964 [1989], lv denied 74 NY2d 662 [1989]; see generally People v Lamont, 25 NY3d at 321).
Finally, defendant contends that his sentence was harsh and excessive given that, prior to trial, he was offered a plea deal with a term of incarceration of five years, and County Court sentenced him to 15 years in prison for his conviction of attempted robbery in the first degree. Initially, to the extent that defendant argues that the sentence imposed was in retaliation for him exercising his right to a jury trial, that contention is unpreserved (see People v Martinez, 144 AD3d 1326, 1326 [2016], lv denied 28 NY3d 1186 [2017]; People v Haskins, 121 AD3d 1181, 1185 [2014], lv denied 24 NY3d 1120 [2015]). Moreover, “the mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations does not, without more, establish retaliation or vindictiveness” (People v Major, 143 AD3d 1155, 1160 [2016], lv denied 28 NY3d 1147 [2017]; see People v Souffrant, 93 AD3d 885, 887 [2012], lv denied 19 NY3d 968 [2012]). Otherwise, defendant had a prior felony conviction making him a second felony of *1161 fender, and he had been convicted of four misdemeanors, related to the possession of stolen property, the criminal possession of a firearm, the possession of a controlled substance and the possession of a forged instrument. Defendant committed the instant offense less than two months after being released from a prison sentence imposed on his felony conviction for criminal possession of a controlled substance in the fifth degree. All of the aforementioned convictions have occurred since 2007, when defendant was 17. Considering this criminal history, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see People v Favor, 49 AD3d 915, 916 [2008]; People v Smith, 43 AD3d 493, 493 [2007]). Defendant’s remaining contentions have been considered and are found to be without merit.
Egan Jr., Lynch, Devine and Clark, JJ., concur.
Ordered that the judgment is modified, on the law, by reversing defendant’s conviction of conspiracy in the fourth degree under count 2 of the indictment; count 2 dismissed, without prejudice, and the sentence imposed thereon vacated; and, as so modified, affirmed.