People v Pichardo (2018 NY Slip Op 02365)





People v Pichardo


2018 NY Slip Op 02365


Decided on April 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 5, 2018

107814

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
RAMON PICHARDO, Appellant.

Calendar Date: February 22, 2018

Before: Garry, P.J., McCarthy, Devine, Mulvey and Rumsey, JJ.


Ralph Cherchian, Albany, for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.


Garry, P.J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered August 21, 2015, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree and conspiracy in the second degree.
Defendant and several codefendants were indicted upon charges of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree and conspiracy in the second degree. The
charges arose from allegations that, in October 2014, defendant and the codefendants made a plan by which defendant sold powder cocaine and crack cocaine to a codefendant, who had arranged in turn to resell the drugs to another individual. After a jury trial, defendant was convicted as charged and sentenced as a second felony drug offender to an aggregate prison term of 15 years, with five years of postrelease supervision. Defendant appeals.
Defendant contends that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence because the People relied upon the inadequately corroborated accomplice testimony of the three codefendants. The codefendants — William Hamm, Desiree Graziano and Christopher Monsanto-Espinal — testified against defendant after each of them pleaded guilty to class B felonies in satisfaction of the charges against them. Taken together, their testimony described a plan by which defendant was to drive from the Bronx to a [*2]hospital in the City of Albany, where Hamm was then recovering from surgery, to sell a total of 20 ounces of powder cocaine and crack cocaine to Hamm [FN1]. Hamm would resell the drugs to a specified buyer immediately after they were delivered to his hospital room, with defendant waiting nearby to be paid following the resale. Unbeknownst to defendant or the codefendants, the buyer was a confidential informant (hereinafter CI), who had advised State Police investigators of the scheme.
Monsanto-Espinal testified that he was a passenger in defendant's car — a Porsche Cayenne — as defendant drove from the Bronx to the hospital on the day of the sale. Defendant told Monsanto-Espinal that he was making the trip to sell drugs to a hospitalized friend, and Monsanto-Espinal agreed to ride along to "have [defendant's] back if anything went wrong." He testified that, after defendant reached Albany and parked near the hospital, a woman came to the driver's seat and spoke with defendant, who gave her a bag that she then carried into the hospital.
Graziano, who was Hamm's girlfriend, testified that she was visiting Hamm in the hospital when he told her that defendant — whom she called "Ra" or "Ray" — and another individual would be arriving that evening with the drugs. When defendant called Hamm to say that he had arrived, Graziano went out to meet defendant at his car, which was parked nearby. Graziano described the vehicle as a Porsche Cayenne that she recognized as defendant's because, among other things, she had ridden in it a week earlier when defendant took her to a store to buy a scale for dividing drugs [FN2]. After she and defendant spoke briefly, defendant gave her a "green and white cigar bag," which she took inside and gave to Hamm in the hospital cafeteria. Upon returning to Hamm's room, they looked inside the bag and confirmed that it held separate packages of powder cocaine and crack cocaine. Graziano took the drugs into a bathroom, removed about 40 grams for her own use and replaced the missing quantity with another substance. The drugs were then returned to the green and white plastic bag and placed on the windowsill of Hamm's room to await the buyer's arrival.
Hamm testified that he had arranged to sell 20 ounces of cocaine to "a guy named D" — that is, the CI — and had contacted defendant to acquire the drugs. His testimony about the transaction at the hospital was consistent with Graziano's. He further identified texts found by investigators in his phone — sent from a contact identified as "Ra" whose number corresponded with defendant's — as messages that he had exchanged with defendant while planning the transaction.
Two State Police investigators testified that, as they waited inside the hospital on the day of the transaction, they saw Graziano pass by them twice and then saw the CI walking toward Hamm's room. Moments later, the CI returned and told them that the drugs were in a bag on the windowsill. The investigators went into Hamm's room, told him that they were conducting a narcotics investigation and asked for permission to search the belongings on the windowsill. Hamm declined, and the investigators then waited in his room for several hours while a search [*3]warrant was obtained. They said that Hamm appeared nervous and "agitated" during this period and that he was typing on his cell phone; Hamm later testified that, among other things, he was deleting messages between himself and defendant. Graziano, who had left the hospital, testified that she received messages from defendant asking what was going on and a message from Hamm advising her that police were in his room. After the warrant was obtained, investigators opened a green and white plastic bag labeled "JR Cigar" that they found on the windowsill. It contained two packages of substances that proved to be powder cocaine and crack cocaine.
During the wait for the search warrant, other investigators met the CI outside, where he identified a parked Porsche Cayenne as "Ra's car" and then identified the person in the driver's seat as Ra. Investigators followed the vehicle for some time as it was driven in "loop[s]" near the hospital. At their request, a City of Albany police officer stopped the car, identified the occupants as defendant and Monsanto-Espinal, and released them. At trial, the police officer identified defendant as the driver he had stopped, and one of the investigators identified him as the driver whom the CI had pointed out as Ra. Hamm, Graziano and Monsanto-Espinal each likewise identified defendant in court.
"A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]; see People v Slaughter, 150 AD3d 1415, 1416 [2017]; People v Godallah, 132 AD3d 1146, 1149 [2015]). Such evidence "need not be powerful in itself[,] show the commission of the crime [or] show that [the] defendant was connected with the commission of the crime. It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (People v Reome, 15 NY3d 188, 191-192 [2010] [internal quotation marks, ellipses and citation omitted]; see People v Smith, 138 AD3d 1248, 1248 [2016], lv denied 27 NY3d 1139 [2016]). Here, corroboration of the codefendants' testimony was provided by the investigators' testimony about their communications with the CI and their observations of the day's events, and additional corroboration was supplied by the physical evidence, including, among other things, the drugs, the "cigar" bag and the texts in Hamm's phone. Many aspects of the codefendants' testimony were also corroborated by video from hospital surveillance cameras, including footage of Graziano leaving the hospital empty-handed, approaching a parked vehicle and then, after a brief exchange, returning to the hospital with a bag that, a few moments later, Hamm was seen carrying in surveillance footage within the hospital. We are satisfied that the accomplice testimony was amply corroborated and, thus, that the People proffered legally sufficient evidence (see People v Myrick, 135 AD3d 1069, 1072-1073 [2016], lvs dismissed 27 NY3d 1072, 1067 [2016]; People v Rivers, 169 AD2d 883, 884-885 [1991], lv denied 77 NY2d 999 [1991]). As for the weight of the evidence, a different verdict would not have been unreasonable if the jury had failed to credit the testimony about defendant's involvement and, in particular, his knowledge of the plan to resell the drugs (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Deferring to the jury's credibility assessments on that issue and viewing the evidence in a neutral light, we are satisfied that the verdict is supported by the weight of the evidence (see People v Slaughter, 150 AD3d at 1417-1418; People v Marshall, 65 AD3d 710, 712 [2009], lv denied 13 NY3d 940 [2010]; People v Patchen, 46 AD3d 940, 1112, 1113-1114 [2007], lv denied 10 NY3d 814 [2008]).
We find merit in defendant's pro se contention that count 4 of the indictment, charging him with conspiracy in the second degree, must be dismissed. Pursuant to Penal Law § 105.20, "[a] person shall not be convicted of conspiracy unless an overt act is alleged and proved to have been committed by one of the conspirators in furtherance of the conspiracy" (emphasis added). Here, count 4 neither alleges that an overt act was committed nor includes factual allegations [*4]describing such an act. There is no assertion that defendant or the codefendants took any action beyond agreeing to "engage in or cause the performance of [conduct constituting a class A felony]." Moreover, the indictment's reference to Penal Law § 150.15 does not incorporate an overt act allegation by reference, as the requirement is not found in that provision (see People v Pike, 63 AD3d 1692, 1693 [2009], lv denied 13 NY3d 838 [2009]; see also People v Boula, 106 AD3d 1371, 1371-1373 [2013], lv denied 21 NY3d 1040 [2013]). Accordingly, defendant's conviction of conspiracy in the second degree under count 4 of the indictment must be reversed and the sentence imposed thereon vacated, and said count must be dismissed as jurisdictionally defective (see CPL 200.50 [7] [a]; People v Deleon, 149 AD3d 1273, 1273 [2017], lv denied 29 NY3d 1077 [2017]; People v Placido, 149 AD3d 1157, 1157-1158 [2017]; People v Grays, 121 AD3d 1178, 1179 [2014]; People v Russo, 57 AD2d 578, 579 [1977]; see generally People v Dreyden, 15 NY3d 100, 103 [2010]).
The record does not support defendant's pro se contention that he did not receive the effective assistance of counsel. Contrary to defendant's claim that his counsel failed to request a missing witness charge with respect to the CI, the record reveals that this charge was given and, further, that counsel emphasized the CI's absence in summation. "As for defendant's remaining ineffective assistance of counsel claims, we note that counsel will not be found to be ineffective on the basis that he or she failed to make an argument or motion that has little or no chance of success" (People v Thorpe, 141 AD3d 927, 935 [2016] [citations omitted], lv denied 28 NY3d 1031 [2016]). The other assertions in defendant's pro se brief have been reviewed and found to be without merit.
Finally, defendant contends that his sentence is harsh and excessive [FN3]. In view of his failure to accept responsibility and his history of prior crimes involving drugs and violence, we find no abuse of discretion or any extraordinary circumstances warranting modification (see People v Taylor, 126 AD3d 1120, 1121-1122 [2015], lvs denied 25 NY3d 1172 [2015], 26 NY3d 936 [2015]).
McCarthy, Devine, Mulvey and Rumsey, JJ., concur.
ORDERED that the judgment is modified, on the law, by reversing defendant's conviction of conspiracy in the second degree under count 4 of the indictment; said count dismissed, without prejudice, and the sentence imposed thereon vacated; and, as so modified, affirmed.



Footnotes

Footnote 1: They had initially planned upon a larger quantity, but reduced the amount when defendant could not procure the amount of powder cocaine that they had originally intended.

Footnote 2: Graziano and Monsanto-Espinal both testified that this visit to the store took place during an earlier trip in which defendant had likewise sold drugs to Hamm at the hospital for resale to another buyer.

Footnote 3: We note that the aggregate length of defendant's sentence is unaffected by the reversal of his conspiracy conviction, as that sentence ran concurrently with his other sentences, the longest of which have not been disturbed.