People v Turner (2019 NY Slip Op 07443)





People v Turner


2019 NY Slip Op 07443


Decided on October 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 17, 2019

107949

[*1]The People of the State of New York, Respondent,
v
Jeffrey Turner, Also Known as Ha, Appellant.

Calendar Date: September 12, 2019

Before: Garry, P.J., Clark, Mulvey and Pritzker, JJ.


George J. Hoffman Jr., East Greenbush, for appellant, and appellant pro se.
Letitia James, Attorney General, New York City (Lisa E. Fleischmann of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered July 23, 2015, upon a verdict convicting defendant of the crimes of conspiracy in the fourth degree and criminal possession of a controlled substance in the third degree.
After an extensive investigation into cocaine sales, defendant and 24 others were charged in a 349-count indictment related to possession and sales of narcotics. Defendant was charged with conspiracy in the second degree and two counts of criminal possession of a controlled substance in the third degree. Following trial, a jury acquitted defendant of conspiracy in the second degree and one count of criminal possession of a controlled substance in the third degree (based on intent to sell), but convicted him of the lesser included offense of conspiracy in the fourth degree and the other count of criminal possession of a controlled substance in the third degree (based on weight of the substance). County Court sentenced defendant, as a second felony drug offender, to a prison term of 2 to 4 years for conspiracy in the fourth degree and to a concurrent prison term of 11 years with three years of postrelease supervision for criminal possession of a controlled substance in the third degree. Defendant appeals.
The evidence was legally sufficient and the verdict is not against the weight of the evidence. Initially, defendant failed to preserve his legal sufficiency argument as to the count of criminal possession of a controlled substance in the third degree of which he was convicted, as he did not specifically challenge that count in his motion for a trial order of dismissal (see People v Chaneyfield, 157 AD3d 996, 996 [2018], lv denied 31 NY3d 1012 [2018]; People v Wright, 139 AD3d 1094, 1095-1096 [2016], lvs denied 28 NY3d 939 [2016], 29 NY3d 1089 [2017]). Nevertheless, in reviewing defendant's challenge that the verdict is against the weight of the evidence, we must determine whether each element of the charged crimes was proven beyond a reasonable doubt (see id.). To determine legal sufficiency, this Court must "evaluate whether the evidence — viewed in the light most favorable to the People — provides any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime[s] charged" (People v Greenfield, 167 AD3d 1060, 1061 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 1204 [2019]; see People v Lamont, 25 NY3d 315, 318 [2015]). As to weight of the evidence, if a different result would not have been unreasonable, this Court must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported" (People v Wilson, 164 AD3d 1012, 1014 [2018]).
A person is guilty of conspiracy in the fourth degree when, with the intent that conduct constituting "a class B or class C felony be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct" (Penal Law § 105.10 [1]; see People v Gagnier, 146 AD3d 1019, 1021 [2017], lv denied 29 NY3d 1079 [2017]; People v Vargas, 72 AD3d 1114, 1118 [2010], lv denied 15 NY3d 758 [2010]). "A person may be convicted of conspiracy so long as an overt act is alleged and shown to have been committed by one of the conspirators in furtherance of a conspiracy" (People v Gagnier, 146 AD3d at 1021; see Penal Law § 105.20). As relevant here, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more" (Penal Law § 220.16 [12]).
Codefendant Cory Pinkney testified that on numerous occasions, including certain specific dates, he sold powder cocaine to codefendant Rayshawn Tibbs, and that defendant sometimes accompanied Tibbs for these sales. Tibbs confirmed his purchases from Pinkney and testified that he and defendant sometimes split the cocaine purchased from Pinkney. Additionally, even when defendant was not involved in those purchases, Tibbs would arrange with defendant to use defendant's apartment to cook the powder cocaine into crack cocaine. Evidence relating to text messages and phone calls, recorded pursuant to eavesdropping warrants and explained by an investigator with experience in narcotics transactions, supported the testimony that drug sales occurred involving members of the conspiracy on specified dates.
This evidence, along with other supporting testimony, documents and recordings, was sufficient to establish that defendant agreed with at least one other person to perform conduct constituting the class B felonies of criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the third degree (see Penal Law §§ 220.16, 220.39), and that more than one of the conspirators committed an overt act in furtherance of the conspiracy. Pinkney's testimony corroborated Tibbs' testimony and tended to connect defendant to the conspiracy, and both of their accomplice testimonies were corroborated by the recordings and text messages intercepted through the eavesdropping warrants, as that information was explained by the police witnesses (see CPL 60.22; People v Caban, 5 NY3d 143, 155 [2005]; People v Miles, 119 AD3d 1077, 1079 [2014], lvs denied 24 NY3d 1003 [2014]).
Moreover, testimony of police witnesses established that when defendant was strip-searched on December 27, 2013, a bag containing approximately 100 grams of cocaine fell out of the leg of his sweatpants. This testimony, along with scientific proof that the substance in the bag contained cocaine, constituted proof of each element of criminal possession of a controlled substance in the third degree, based on the weight of the substance (see Penal Law § 220.16 [12]). Because the accomplices' credibility was challenged, their testimony was not always in harmony and the police witnesses' explanations of the coded calls and messages were subject to interpretation, a different result would not have been unreasonable. Nevertheless, viewing the evidence in a neutral light and according "deference to the jury's resolution of credibility issues," the verdict is supported by the weight of the evidence (People v Miles, 119 AD3d at 1078; see People v Vargas, 72 AD3d at 1117-1119).
County Court erred, however, in denying defendant's motion to suppress the bag of cocaine recovered from his clothing during the strip search. The People concede that the search warrant did not authorize a search of defendant under the circumstances of his arrest, but argue that the police had probable cause to arrest defendant and strip-search him incident to that lawful arrest. "A police officer may arrest for an offense without a warrant if he [or she] has [probable] cause to believe that a person has committed that offense in his [or her] presence" (People v Maldonado, 86 NY2d 631, 635 [1995]; see CPL 140.10 [1] [b]). "Probable cause exists when an officer has knowledge of facts and circumstances sufficient to support a reasonable belief that an offense has been or is being committed. Such facts and circumstances must make it more probable than not that a crime has taken place and that the one arrested is its perpetrator" (People v Parker, 84 AD3d 1508, 1509 [2011], lv denied 18 NY3d 927 [2012] [internal quotation marks and citations omitted]; see People v Maldonado, 86 NY2d at 635; People v Lovejoy, 92 AD3d 1080, 1081 [2012]).
Moreover, "as is relevant here, 'a strip search must be founded on a reasonable suspicion that the arrestee is concealing evidence underneath clothing and the search must be conducted in a reasonable manner'" (People v Cogdell, 126 AD3d 1136, 1138 [2015], lv denied 25 NY3d 1200 [2015], quoting People v Hall, 10 NY3d 303, 310-311 [2008], cert denied 555 US 938 [2008]; see People v Williams, 144 AD3d 1204, 1204 [2016]). Strip searches "cannot be routinely undertaken as incident to all drug arrests," but must be based on "specific and articulable facts which, along with any logical deductions, reasonably prompted the intrusion" (People v Hall, 10 NY3d at 311 [internal quotation marks, brackets and citation omitted]). Courts consider several factors when determining whether, under the totality of the circumstances, the police had reasonable suspicion to conduct "a strip search, including the defendant's excessive nervousness, unusual conduct, information showing pertinent criminal propensities, informant's tips, loose-fitting or bulky clothing, an itinerary suggestive of wrongdoing, incriminating matter discovered during a less intrusive search, lack of employment, indications of drug addiction, information derived from others arrested or searched contemporaneously, and evasive or contradictory answers to questions" (People v Kelley, 306 AD2d 699, 700 [2003], lv denied 1 NY3d 598 [2004]; see People v Anderson, 104 AD3d 968, 971 [2013], lvs denied 21 NY3d 1013, 1016 [2013]).
At the suppression hearing, officers testified regarding the information obtained through the eavesdropping warrants, including information that Tibbs was planning to travel to New York City to meet with Pinkney and purchase 100 grams of cocaine on December 27, 2013. Officers had monitored Tibbs' phone location as it traveled to New York City and back to Albany County, then followed him for a short while before ending their surveillance to avoid alerting Tibbs. The officers saw two other people in the vehicle with Tibbs. Approximately half an hour later, other officers observed Tibbs and another individual — who was later identified as defendant — arrive in the same vehicle at Tibbs' residence. Tibbs went inside, defendant transferred to another vehicle, then Tibbs came out and also entered the second vehicle. Based on the information that Tibbs planned to purchase cocaine from Pinkney, made the round trip to New York City and routinely went to defendant's apartment after such purchases to cook the powder cocaine into crack cocaine, along with other evidence of the conspiracy that had been ongoing for months, the officers had probable cause to believe that defendant had committed a conspiracy offense.
The evidence at the hearing did not, however, support a strip search. The officers knew that Tibbs had purchased a large quantity of cocaine and that drug traffickers frequently secrete narcotics on their person. Yet they could not identify the other people who were in the vehicle when it returned from New York City, leaving no proof that defendant had accompanied Tibbs to purchase the drugs. The police made no observations of the vehicle for half an hour before defendant was removed from another vehicle. Tibbs could have picked defendant up during that unobserved time period. Similarly, it was possible that Tibbs had delivered the drugs somewhere during that time frame, left them in the first vehicle or brought them into his house immediately before the officers removed the two men from the second vehicle; it was not clear that Tibbs and/or defendant still had the drugs when police encountered them. A pat frisk of defendant did not reveal any contraband. The evidence did not establish whether the officers had completed a search of the vehicle that travelled to New York City, the second vehicle, Tibbs or his house before they strip-searched defendant. Of the factors courts consider to determine whether the police had probable cause for a strip search, the only ones present here are "information showing pertinent criminal propensities" — namely, the proof of defendant's participation in a drug trafficking conspiracy — and "an itinerary suggestive of wrongdoing" — based mainly on Tibbs' actions and his routine of contacting defendant to cook the drugs soon after returning to Albany County with his purchases from Pinkney (People v Kelley, 306 AD2d at 700). Considering the totality of the circumstances based on the evidence presented at the suppression hearing, the People did not prove that the officers had a reasonable suspicion that defendant was concealing drug evidence underneath his clothing at the time of the search (compare People v Cogdell, 126 AD3d at 1138-1139). Therefore, as County Court erred in concluding that the strip search was proper, defendant was entitled to suppression of the cocaine retrieved during that search and any testimony or evidence concerning the search.
Because there is a reasonable possibility that admission of the cocaine and testimony that it was found in defendant's clothing could have contributed to the jury's determination of the conspiracy count as well as the count alleging criminal possession of a controlled substance (see People v Green, 141 AD3d 746, 747 [2016]), we reverse the judgment of conviction in its entirety. Based on our reversal, we need not address defendant's remaining contentions.
Garry, P.J., Clark and Pritzker, JJ., concur.
ORDERED that the judgment is reversed, on the law, defendant's motion to suppress any evidence related to the strip search granted, and matter remitted to the County Court of Albany County for further proceedings not inconsistent with this Court's decision.