# United States Court of Appeals
## For the First Circuit

No. 17-1900

KIRK LASSEND,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Karen A. Pickett, with whom Pickett Law Offices, P.C., was on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellee.

August 2, 2018

**LYNCH**, **Circuit Judge**.  Kirk Lassend appeals from the district court's denial of his § 2255 petition.  United States v. Lassend, No. CR 10-40019, 2017 WL 2960518 (D. Mass. July 11, 2017), certificate of appealability granted, 265 F. Supp. 3d 103 (D. Mass. 2017).  He argues that his sentence as an armed career criminal under the Armed Career Criminal Act ("ACCA") is unconstitutional under Supreme Court precedent decided after his earlier appeal from his conviction was rejected in 2013.

We affirm the district court and find that the three prior convictions are ACCA predicates.  We again hold that a Massachusetts conviction for assault with a deadly weapon is a predicate offense under the ACCA's force clause.  As to Lassend's New York conviction for attempted second-degree assault, we conclude that a conviction under New York Penal Law § 120.05(7) qualifies as a violent felony under the ACCA's force clause.  We reach the same conclusion as to Lassend's conviction for New York first-degree robbery under New York Penal Law § 160.15(4).  Our analysis is consistent with that of many other circuits, and as to the New York first-degree robbery conviction, consistent with the views of the Second Circuit in Stuckey v. United States, 878 F.3d 62 (2d Cir. 2017), petition for cert. filed, No. 17-9369 (U.S. June 11, 2018).  Lassend's sentence stands.

## I. **Background**

A.   Lassend's Arrest and Conviction

In July 2010, two individuals in Fitchburg, Massachusetts called 911 to report that Lassend had been walking up and down the street with a gun and firing shots into the air. Police officers placed Lassend under arrest at the scene. The officers recovered ammunition from Lassend's pocket and found a gun in an unlocked closet in the common hallway of a nearby apartment building. A search of Lassend's residence uncovered a holster that appeared to fit that gun, and additional ammunition.

In September 2010, Lassend was indicted on charges of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count One), and being a felon in possession of ammunition, also in violation of § 922(g)(1) (Count Two). After a five-day trial, the jury convicted Lassend of both counts in October 2011.

B.   Original District Court Sentencing Proceedings

The Probation Office's 2012 presentence report ("PSR") determined that Lassend was subject to a sentencing enhancement under the ACCA because he had at least three prior convictions for a violent felony or a serious drug offense. The PSR identified four of his prior convictions as qualifying ACCA predicates: (1) a 1992 New York conviction for "Robbery in First Degree: Forcible Theft Armed with Deadly Weapon"; (2) a 1997 New York conviction

for "Robbery in First Degree: Display What Appears to [Be a] Firearm"; (3) a 1998 New York conviction for "Assault in Second Degree"; and (4) a 2010 Massachusetts conviction for "Assault and Battery by Dangerous Weapon" ("ABDW") and "Assault by Dangerous Weapon" ("ADW").

The PSR determined that Lassend's Guidelines sentencing range ("GSR") was 235 to 293 months, with a mandatory minimum of 15 years under the ACCA. Lassend objected, inter alia, in the district court to the PSR's conclusion that he was subject to an ACCA enhancement, arguing that the residual clause of the ACCA was "unconstitutionally void for vagueness."

At sentencing, in March 2012, the district court overruled Lassend's objections to the PSR, including his objection to the PSR's determination that he was subject to an ACCA enhancement. Lassend stated that he had no other objections to the PSR "just as long as [his] objection to the [ACCA] on grounds that it's constitutionally void for vagueness [wa]s preserved." The district court then adopted the PSR's calculations and determined that Lassend's GSR was 235 to 293 months. After hearing from both parties, the district court sentenced Lassend to a term of imprisonment of 235 months on each count, to be served concurrently, followed by a five-year term of supervised release.

C.    Direct Appeal

Lassend filed a direct appeal challenging his conviction.  See United States v. Lassend, 545 F. App'x 3 (1st Cir. 2013) (per curiam).  He did not appeal his sentence, nor argue that the residual clause of the ACCA was unconstitutional.  See id.  Lassend's conviction was affirmed in October 2013.  See id.  Lassend did not petition for certiorari.

D.    Habeas Corpus Proceedings Before the District Court

The Supreme Court later decided Johnson v. United States ("Johnson II"), 135 S. Ct. 2551 (2015), on June 26, 2015.  On July 20, 2015, Lassend filed a supplemental[1] pro se petition under § 2255, arguing that he should not have been sentenced under the ACCA in light of Johnson II.  The government opposed his petition.

After the district court appointed counsel to represent Lassend in the § 2255 proceedings, Lassend filed another supplemental petition in which he argued that his sentence was unconstitutional because the government could not show that his criminal record contained violent felonies under the ACCA's force clause, 18 U.S.C. § 924(e)(2)(B)(i).  Consequently, he argued, his ACCA sentence must have been based on predicates that relied on the ACCA's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), which

---

[1]    On October 14, 2014, Lassend had filed a timely pro se petition under 28 U.S.C. § 2255, challenging his conviction on four grounds.

- 5 -

was declared unconstitutionally vague in Johnson II, see 135 S. Ct. at 2563. In particular, Lassend argued that (1) his New York conviction for attempted second-degree assault does not qualify as a violent felony because the crime can be committed recklessly; (2) his New York first-degree robbery convictions do not qualify as violent felonies because they do not require the use of violent force; (3) his Massachusetts ABDW conviction does not qualify as a violent felony because the crime can be committed recklessly and by a mere touching; and (4) his Massachusetts ADW conviction does not qualify as a violent felony because it does not require the intentional use of violent force.

The government opposed these arguments for the same reasons it now gives in support of the district court's decision.[2] It also argued those issues should not be reached because Lassend had procedurally defaulted his Johnson II claims. We deal with the procedural default and merits arguments below.

We also note that the government obtained the indictment and plea-colloquy transcript for Lassend's New York attempted second-degree assault conviction and placed them in the record

---

[2] The government also explained that the district court need not reach the issue of whether Lassend's Massachusetts ABDW conviction should also be considered a violent felony given that Lassend's criminal record contained three other predicate violent felonies.

before the district court.[3] The government argued that although the indictment did not cite the statutory provision for the counts charged, it contained language mirroring the statutory language of New York Penal Law § 120.05(2) as to the first count and New York Penal Law § 120.05(7) (prisoner assault) as to the second count. The government argued that the plea-colloquy transcript showed that Lassend pled guilty to the second count of the indictment, and, consequently, the applicable statutory provision for his conviction was § 120.05(7).

At the hearing on Lassend's § 2255 petition in May 2017, Lassend argued for the first time that his New York first-degree robbery conviction under New York Penal Law § 160.15(4) is not a violent felony because the statute does not require the actual use of a dangerous weapon to threaten the victim, nor, he says, does it require that the perpetrator himself intentionally use violent force.

On July 11, 2017, the district court denied Lassend's § 2255 petition in a careful decision. See Lassend, 2017 WL 2960518, at *1. Addressing Lassend's procedural default on his ACCA claim, the district court noted that the Supreme Court had

---

[3]     The government also obtained certified copies of convictions showing that Lassend's 1992 first-degree robbery conviction was for violating § 160.15(2) and that his 1997 first-degree robbery conviction was for violating § 160.15(4). Lassend does not dispute that he was convicted under these statutes.

rejected vagueness challenges to the ACCA's residual clause in James v. United States, 550 U.S. 192 (2007), overruled by Johnson II, 135 S. Ct. 2551, and Sykes v. United States, 564 U.S. 1 (2011), overruled by Johnson II, 135 S. Ct. 2551, and those decisions were controlling at the time of Lassend's sentencing and direct appeal. Lassend, 2017 WL 2960518, at *8. Moreover, Lassend's direct appeal was filed, argued, and decided before the Supreme Court granted certiorari in Johnson II. Id. As such, the district court found that a Johnson II claim was not reasonably available to Lassend at the time of his direct appeal, thereby establishing cause. Id. The district court also reasoned that the prejudice inquiry merged with Lassend's merits claims because if Lassend could show that he should not have been sentenced under the ACCA in light of Johnson II, "his failure to raise that claim obviously resulted in prejudice." Id.

As to the merits of Lassend's claims, the district court first found that, under clear First Circuit precedent, Lassend's Massachusetts ADW conviction qualifies as a violent felony under the ACCA's force clause. Id. at *10. The district court also found that Lassend's New York attempted second-degree assault conviction qualifies as an ACCA predicate under the force clause. Id. at *10-12. Applying the modified categorical approach, the district court determined that Lassend had been convicted under New York Penal Law § 120.05(7) because the relevant Shepard

documents -- the state court indictment and the plea-colloquy transcript -- showed that Lassend had pled guilty to the second count of the indictment, the language of which mirrored that of § 120.05(7). Lassend, 2017 WL 2960518, at *11. The district court rejected Lassend's argument that a conviction under § 120.05(7) does not constitute a violent felony because a perpetrator can violate subsection (7) without using violent force in causing injury. Id. at *11-12. In doing so, the district court noted that the Supreme Court's decision in United States v. Castleman, 134 S. Ct. 1405 (2014), undermined cases suggesting that the indirect application of force cannot involve the use of physical force as required by the force clause. Lassend, 2017 WL 2960518, at *12.

The district court next found that Lassend's 1997 New York first-degree robbery conviction qualifies as a violent felony. Id. at *12-16. It applied the modified categorical approach to determine that Lassend had been convicted under § 160.15(4). Id. at *13. It then determined that the "[d]isplays what appears to be a . . . firearm" element of that subsection involves the threatened use of physical force, thereby qualifying the 1997 conviction as a violent felony. Id. at *14-15 (alteration in original) (quoting N.Y. Penal Law § 160.15(4)). The district court also determined that § 160.15(4) satisfies both the intent requirement of Leocal v. Ashcroft, 543 U.S. 1 (2004), and the force

requirement of <u>Johnson</u> v. <u>United States</u> ("<u>Johnson I</u>"), 559 U.S. 133 (2010). <u>Lassend</u>, 2017 WL 2960518, at *16 (citing <u>Stuckey</u> v. <u>United States</u>, 224 F. Supp. 3d. 219, 225-230 (S.D.N.Y. 2016)).

The district court accordingly held that Lassend was properly sentenced as an armed career criminal. <u>Id.</u>

The district court granted Lassend a certificate of appealability on Lassend's claim that his ACCA sentence violates the Constitution.

## II. <u>Discussion</u>

An individual in federal custody may petition for post-conviction relief under 28 U.S.C. § 2255(a) if, inter alia, the individual's sentence "was imposed in violation of the Constitution or laws of the United States" or "is otherwise subject to collateral attack." <u>Id.</u> The petitioner bears the burden of proof. <u>Wilder</u> v. <u>United States</u>, 806 F.3d 653, 658 (1st Cir. 2015) (citing <u>David</u> v. <u>United States</u>, 134 F.3d 470, 474 (1st Cir. 1998)). When reviewing a district court's denial of a § 2255 petition, we review the district court's legal conclusions de novo and any factual findings for clear error. <u>Id.</u> (citing <u>Owens</u> v. <u>United States</u>, 483 F.3d 48, 57 (1st Cir. 2007), <u>abrogated on other grounds by</u> <u>Weaver</u> v. <u>Massachusetts</u>, 137 S. Ct. 1899 (2017)).

A.   <u>Procedural Default</u>

"[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and

prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982); Bousley v. United States, 523 U.S. 614, 622 (1998)). The procedural default rule is "adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id.

1. Cause

A petitioner has cause for procedurally defaulting a constitutional claim where that claim was "so novel that its legal basis [wa]s not reasonably available to counsel" at the time of the default. Reed v. Ross, 468 U.S. 1, 16 (1984). Despite that broad language of reasonableness, the Supreme Court also held in Reed that a claim "will almost certainly have [had] . . . no reasonable basis" when the claim is based on a "constitutional principle that had not been previously recognized but which is held to have retroactive application," and the constitutional principle arises from a decision in which the Court (1) "explicitly overrule[s] one of [its own] precedents," or (2) "overtur[ns] a longstanding and widespread practice to which [the] Court ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved." Id. at 17. We are bound by those latter statements.

At the time of Lassend's direct appeal in 2013, the Supreme Court's decisions in James and Sykes were still good law.

Both of those decisions had rejected challenges to the ACCA's residual clause on constitutional vagueness grounds. Sykes, 564 U.S. at 28 (Scalia, J., dissenting); James, 550 U.S. at 210 n.6. Johnson II expressly overruled James and Sykes in relation to the ACCA. See 135 S. Ct. at 2563. Even though Lassend had made a vagueness argument in the district court and had abandoned it on appeal, under Reed, we find that Lassend has shown cause for his procedural default. See United States v. Snyder, 871 F.3d 1122, 1127 (10th Cir. 2017) (holding that petitioner's procedurally defaulted Johnson II claim was not reasonably available because Johnson II overruled Sykes and James, thus satisfying the first prong of Reed).

The government argues that Bousley requires that we find that Lassend had no cause. In that case, the petitioner argued that he had cause for his procedural default because it would have been futile to raise the argument in question. Bousley, 523 U.S. at 623. The Court rejected this contention, stating that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Id. (quoting Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982)). The government uses this case to argue that Lassend had no cause for procedurally defaulting his ACCA constitutionality argument even though Sykes and James foreclosed such a challenge. Bousley is no help to the government because the petitioner's argument in that

case was not based on a constitutional right created by the Supreme Court's overruling of its own precedent. See 523 U.S. at 622. Reed stated that, where the Supreme Court "explicitly overrule[s] one of [its own] precedents, . . . the failure of a defendant's attorney to have pressed such a claim . . . is sufficiently excusable to satisfy the cause requirement." 468 U.S. at 17. That is what happened here. Unlike the defaulted argument in Bousley, Lassend's argument was not "available at all," Smith v. Murray, 477 U.S. 527, 537 (1986) (internal quotation marks omitted), until the Supreme Court "explicitly overrule[d]" Sykes and James, Reed, 468 U.S. at 17.

 2.  Prejudice

    To overcome procedural default, Lassend must also show "'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 168. If Lassend is correct that the prior convictions he is challenging are not violent felonies, he can argue actual prejudice because his sentence was undoubtedly influenced by the determination that he had qualifying ACCA predicates.[4] On the other hand, if Lassend's challenge fails on

---

    [4] The finding that Lassend was an armed career criminal under the ACCA subjected him to a statutory minimum sentence of 15 years for violating 18 U.S.C. § 922(g)(1), see id. § 924(e)(1), compared to a ten-year statutory maximum that would otherwise be applicable, see id. § 924(a)(2). The finding also increased his total offense level, and thereby his GSR, under the Sentencing Guidelines. See U.S.S.G. § 4B1.4.

- 13 -

the merits, there cannot be actual prejudice because there would be no error from which such prejudice would flow. While we have found little law on the topic of prejudice, we think that the prejudice inquiry dovetails with the merits inquiry, and is not satisfied by mere argument. Contra Snyder, 871 F.3d at 1128.

B.    Merits of Constitutional Challenge to the ACCA

An individual who violates 18 U.S.C. § 922(g)(1) is generally subject to a maximum penalty of ten years' imprisonment. See id. § 924(a)(2). However, under the ACCA, a violation of § 922(g)(1) carries a mandatory minimum of fifteen years' imprisonment if the defendant has "three previous convictions . . . for a violent felony . . . ." Id. § 924(e)(1). The ACCA's force clause defines "violent felony" as a conviction that carries a maximum term of imprisonment of more than one year, and that "has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 924(e)(2)(B)(i). The Supreme Court has defined "physical force" under the force clause as "violent force -- that is, force capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140 (citing Flores v. Ashcroft, 350 F.3d 666, 672 (7th Cir. 2003)).

On appeal, Lassend challenges the district court's determination that his convictions for Massachusetts ADW, New York attempted second-degree assault, and New York first-degree robbery

- 14 -

qualify as predicates under the ACCA's force requirement, as defined in Johnson I, making different arguments as to each. The parties agree that each of the statutes giving rise to these three convictions are divisible. Hence, we apply the modified categorical approach. See id. at 144. Under it, we first determine "which of the multiple offenses listed in the statute[s] w[ere] the crime[s] committed by the defendant," United States v. Faust, 853 F.3d 39, 53 (1st Cir.), reh'g denied, 869 F.3d 11 (1st Cir. 2017), and then evaluate whether those offenses meet the ACCA's violent-force requirement, see United States v. Starks, 861 F.3d 306, 315-16 (1st Cir. 2017). We consider whether the least serious conduct covered by the offense "necessarily involves the use[, attempted use, or threatened use] of violent force," but there must be "a 'realistic probability' of a charge and conviction" for that conduct. Id. at 315 (citing Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013); United States v. Fish, 758 F.3d 1, 6 (1st Cir. 2014)).[5]

1.  Massachusetts ADW

The Massachusetts ADW statute provides that

> [w]hoever, by means of a dangerous weapon, commits an assault upon another shall be

_____

[5] For the purposes of our analysis, we assume that decisions construing the term "crime of violence" in the Sentencing Guidelines and decisions construing the term "crime of violence" in 18 U.S.C. § 16(a) inform the construction of the term "violent felony" in the ACCA. See Fish, 758 F.3d at 9; United States v. Hart, 674 F.3d 33, 41 n.5 (1st Cir. 2012).

> punished by imprisonment in the state prison for not more than five years or by a fine of not more than one thousand dollars or imprisonment in jail for not more than two and one-half years.

Mass. Gen. Laws ch. 265, § 15B(b).  Lassend does not dispute that he was convicted under this statute.

In United States v. Whindleton, 797 F.3d 105, 116 (1st Cir. 2015), we rejected the argument that Johnson I overruled our holding in United States v. Am, 564 F.3d 25 (1st Cir. 2009), that the Massachusetts ADW statute "'has as an element the use, attempted use, or threatened use of physical force' as required by the ACCA's Force Clause."  Whindleton, 797 F.3d at 116 (citing Am, 564 F.3d at 33).  While Whindleton left open the question as to whether Massachusetts ADW fails to qualify as a violent felony under ACCA because it lacks a requirement that the use or threat be intentional, id. at 116 n.12, we answered that question in the negative in United States v. Hudson, 823 F.3d 11 (1st Cir. 2016).  There, we held that a conviction under the Massachusetts ADW statute "includes a mens rea requirement sufficient to qualify the conviction as a predicate under the ACCA's force clause."  Id. at 17.

Of course, "newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point."  United States v. Wurie, 867 F.3d 28, 34 (1st Cir. 2017) (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st

- 16 -

Cir. 2010)), cert. denied, 138 S. Ct. 690 (2018). Lassend fails

to even make the argument that an exception[6] to this rule applies.

We are bound by the law of the circuit that a conviction under

Mass. Gen. Laws ch. 265, § 15B(b) constitutes a violent felony

under the ACCA's force clause.

    2.    <u>New York Attempted Second-Degree Assault under Subsection (7)</u>

Under New York Penal Law § 120.05(7),

> [a] person is guilty of assault in the second
> degree when . . . [h]aving been charged with
> or convicted of a crime and while confined in
> a correctional facility, as defined in
> subdivision three of section forty of the
> correction law, pursuant to such charge or
> conviction, with intent to cause physical
> injury to another person, he causes such
> injury to such person or to a third
> person . . . .

<u>Id.</u> Reading the second count of the indictment underlying

Lassend's conviction for attempted second-degree assault and his

plea colloquy, it is clear that Lassend was convicted under New

York Penal Law § 120.05(7).[7]

---

    [6]    There are narrow exceptions to the law of the circuit rule, including (1) "when the holding of the prior panel is 'contradicted by controlling authority, subsequently announced'"; or (2) when "authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." <u>Wurie</u>, 867 F.3d at 34 (first quoting <u>San Juan Cable</u>, 612 F.3d at 33; then quoting <u>United States</u> v. <u>Rodríguez</u>, 527 F.3d 221, 225 (1st Cir. 2008)).

    [7]    The second count of the indictment stated the following:

- 17 -

Both the indictment and the plea-colloquy transcript are Shepard-approved documents.  See Mathis v. United States, 136 S. Ct. 2243, 2249 (2016) (citing Shepard v. United States, 544 U.S. 13, 26 (2005)).  The district court correctly concluded that § 120.05(7) was the applicable statue of conviction.

We reject[8] Lassend's assertion that the indictment must expressly cite § 120.05(7) for the documents to establish that he was convicted under that statutory provision.  See United States

---

> The grand jury of the County of the Bronx by this indictment, accuses the defendant Kirk Lassend of the crime of assault in the second degree committed as follows:
>
> The defendant, Kirk Lassend, . . . with intent to cause physical injury to another person, Willie Wells, did cause such injury to Willie Wells, where at the time of the commission of the act, the defendant was confined in a correctional facility pursuant to having been charged with or convicted of a crime.

And defense counsel stated that "Mr. Lassend has authorized me . . . to enter a plea of guilty to attempted assault in the second degree, under count two of [the] indictment . . . ."  (emphasis added).  The trial court also confirmed with Lassend that he was pleading guilty to "attempted assault in the second degree under the second count of the indictment . . . ."  (emphasis added).

[8]    We also reject Lassend's claim that the documents do not establish that he was convicted under § 120.05(7) because the plea-colloquy transcript shows that he pled guilty to "attempted assault" whereas the indictment charged assault.  Lassend fails to explain how this alleged discrepancy is material, given that Lassend acknowledged during the plea colloquy that he was pleading guilty to count two of the indictment.  Moreover, the ACCA's force clause expressly encompasses crimes involving the "attempted . . . use of physical force."  18 U.S.C. § 924(e)(2)(B)(i) (emphasis added).

- 18 -

v. Sanchez-Espinal, 762 F.3d 425, 430 (5th Cir. 2014) (holding that "[a] charging [document] that closely tracks the language of a particular statute can establish that the defendant was charged under that section").

Lassend next argues that a conviction under § 120.05(7) does not qualify as a violent felony because the statute does not actually require that physical force be used to cause the injury. To support this argument, Lassend relies primarily on two district court decisions from other circuits, which concern a different subsection of § 120.05 and purport to rely on a suggestion from Second Circuit reasoning in Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003), which the Second Circuit may have itself disavowed.[9] The Second Circuit recently recognized that, to the

---

[9] Lassend relies on United States v. Poindexter, No. 3:97-CR-00079, 2016 WL 6595919 (E.D. Va. Nov. 7, 2016) and Grant v. United States, No. 06-CR-732, 2017 WL 2881132 (E.D.N.Y. July 5, 2017). The district courts in both Poindexter and Grant held that a conviction for second-degree assault under New York Penal Law § 120.05(1) is not a violent felony under the ACCA's force clause. Grant, 2017 WL 2881132, at *5; Poindexter, 2016 WL 6595919, at *4. Under § 120.05(1), second-degree assault is committed when an individual, "[w]ith intent to cause serious physical injury to another person, causes such injury to such person or to a third person." N.Y. Penal Law § 120.05(1). Both Poindexter and Grant relied on the Second Circuit's reasoning in Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003). See Grant, 2017 WL 2881132, at *5-6; Poindexter, 2016 WL 6595919, at *4. In Chrzanoski, the Second Circuit held that a conviction under Connecticut General Statutes § 53a-61(a)(1) -- which contains virtually identical language to New York Penal Law § 120.05(1) -- does not qualify as a crime of violence pursuant to 18 U.S.C. § 16(a). 327 F.3d at 192, 195. In so holding, the Second Circuit noted that

extent that its reasoning in Chrzanoski suggests that the use of

physical force cannot be indirect, that logic does not survive the

Supreme Court's decision in Castleman.  See United States v. Hill,

890 F.3d 51, 60 (2d Cir. 2018).  In Castleman, the Court held that

the common law concept of physical force "encompasses even its

indirect application," so, for example, sprinkling poison in a

victim's drink constitutes the use of physical force because the

use of force is not the sprinkling of the poison, but "the act of

employing poison knowingly as a device to cause physical harm."

134 S. Ct. at 1414-15.

---

it seems an individual could be convicted of
intentional assault in the third degree for
injury caused not by physical force, but by
guile, deception, or even deliberate
omission. . . . [H]uman experience suggests
numerous examples of intentionally causing
physical injury without the use of force, such
as a doctor who deliberately withholds vital
medicine from a sick patient. . . .

Id. at 195-96.  Like the Second Circuit in Chrzanoski, we held in
Whyte v. Lynch, 807 F.3d 463 (1st Cir. 2015), that a conviction
under Connecticut General Statutes § 53a-61(a)(1) does not qualify
as a crime of violence under 18 U.S.C. § 16(a).  Whyte, 807 F.3d
at 467, 471.  However, the government in Whyte had waived the
argument that, under the Supreme Court's reasoning in Castleman,
causing injury categorically "involves the use of physical force
by the defendant himself even if the defendant's misconduct was
limited to guile, deception, or deliberate omission."  Whyte v.
Lynch, 815 F.3d 92, 92-93 (1st Cir. 2016) (internal quotation marks
omitted) (denying petition for rehearing).  Moreover, as we explain
below, there is a material difference between generic assault
statutes like Connecticut General Statutes § 53a-61(a)(1) and New
York Penal Law § 120.05(1), on the one hand, and New York Penal
Law § 120.05(7), on the other.

The Court in Castleman also held that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force" under 18 U.S.C. § 921(a)(33)(A). 134 S. Ct. at 1414 (emphasis added). But the Court recognized that while the term "physical force" as used in § 921(a)(33)(A) should be given its presumptive common law meaning of "offensive touching," the same cannot be said for the term "physical force" in the ACCA's force clause. Id. at 1410. Specifically, the ACCA deals with violent felonies and, consequently, violent force -- not merely offensive touching -- is required for a crime to satisfy the ACCA's force clause. Id. As such, the Court expressly stated that it was not reaching the issue of "[w]hether or not the causation of bodily injury necessarily entails violent force." Id. at 1413 (emphasis added).[10]

We need not decide whether some methods of indirectly causing physical harm[11] -- for example, deliberately withholding

---

[10] Justice Scalia concurred in Castleman. 134 S. Ct. at 1416 (Scalia, J., concurring in part and concurring in the judgment). Under his view, the term "physical force" in § 921(a)(33)(A)(ii) should be given the same meaning as the term "physical force" in the ACCA's force clause. Id. at 1417. Moreover, Justice Scalia believed that "'intentionally or knowingly causi[n]g bodily injury' . . . categorically involves the use of 'force capable of causing physical pain or injury to another person.'" Id. (citation omitted).

[11] Following Castleman, the Fourth Circuit has consistently drawn a distinction between the causation of bodily injury and the use of violent force. See United States v. Middleton, 883 F.3d 485, 491 (4th Cir. 2018) (noting that "the use of violent force" cannot be conflated "with the causation of injury"); United States

vital medicine -- do not involve the use of violent force, because Lassend's challenge to the use of § 120.05(7) as an ACCA predicate suffers from an antecedent flaw.

In evaluating whether a crime satisfies the force clause, we examine "the least serious conduct for which there is a 'realistic probability' of a charge and conviction." Starks, 861 F.3d at 315 (emphasis added) (citing Moncrieffe, 569 U.S. at 190-91; Fish, 758 F.3d at 6). Lassend has not shown how there is a realistic probability of violating § 120.05(7) -- which requires that the assault be committed by a prisoner in a correctional facility -- without using violent force. It is hard to imagine how a prisoner could intentionally cause physical harm to someone in prison by, for instance, failing to fulfill a legal duty.[12] And

v. McNeal, 818 F.3d 141, 156 & 156 n.10 (4th Cir. 2016) (same). On the other hand, other circuits have not recognized such a distinction. See, e.g., United States v. Ontiveros, 875 F.3d 533, 535, 538 (10th Cir. 2017) (concluding that a conviction for Colorado second-degree assault -- which is committed when a person "[w]ith intent to cause bodily injury to another person, . . . causes serious bodily injury to that person or another person," Colo. Rev. Stat. § 18-3-203(1)(g) -- is a crime of violence under U.S.S.G. § 4B1.2(a)(1) because it is impossible to cause bodily injury without the use of physical force), cert. denied, 138 S. Ct. 2005 (2018); United States v. Ovalle-Chun, 815 F.3d 222, 226 (5th Cir. 2016) ("Impairing a person's physical condition or causing a person substantial pain is consistent with a force violent enough to constitute a crime of violence under U.S.S.G. § 2L1.2.").

[12] It is possible that the hypothetical conduct described in Chrzanoski -- withholding vital medicine -- can be the basis of an assault charge under § 120.05(1), at least where there is a legal duty to provide such medicine, see People v. Miranda, 612 N.Y.S.2d 65, 66 (App. Div. 1994).

- 22 -

Lassend does not point us to a single New York case in which a conviction under § 120.05(7) has been obtained based on nonviolent conduct. Because "[w]e are not supposed to imagine 'fanciful, hypothetical scenarios' in assessing what the least serious conduct is that the statute covers," United States v. Ellison, 866 F.3d 32, 38 (1st Cir. 2017) (quoting Fish, 758 F.3d at 6), we conclude that Lassend's conviction under § 120.05(7) qualifies as a violent felony under the ACCA's force clause.

3.   New York First-Degree Robbery

Lassend was convicted under New York Penal Law § 160.15(4), which provides, in relevant part, that:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

Id. (emphasis added). New York Penal Law § 160.15(4) requires the state to prove that a defendant displayed an item that appears to be a firearm in the course of "forcibly steal[ing]" property. Id. "A person 'forcibly steals' when the person 'uses or threatens the immediate use of physical force upon another person for the purpose of . . . [c]ompelling the owner of such property or another person to deliver up the property." People v. Lamont, 33 N.E.3d 1275, 1278 (N.Y. 2015) (alteration in original) (quoting N.Y. Penal

- 23 -

Law § 160.00(2)). The government satisfies the display requirement by "show[ing] that the defendant consciously displayed something that could reasonably be perceived as a firearm, with the intent of forcibly taking property, and that the victim actually perceived the display." People v. Lopez, 535 N.E.2d 1328, 1331 (N.Y. 1989) (citing People v. Baskerville, 457 N.E.2d 752, 756 (N.Y. 1983)). That display objectively puts a victim in reasonable fear of physical harm, regardless of whether the item displayed is actually capable of producing such harm. As such, as the district court correctly held, § 160.15(4) "has as an element the . . . threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

As the New York Court of Appeals stated in People v. Miller, 661 N.E.2d 1358 (N.Y. 1995), the core robbery offense "involves the misappropriation of property under circumstances that pose a danger not only to the property but to the person." Id. at 1362 (emphasis added). "It is the robber's intent . . . to permanently deprive the victim of property by compelling the victim to give up property or quashing any resistance to that act that is prohibited by law." Id.

The court went on to discuss the "attendant circumstances" (such as displaying a weapon), noting that these aggravating circumstances embody a "legislative determination" that the "'aggravating factors' exacerbate[] the core criminal act

and increase[] the danger of serious physical injury . . . , thus warranting harsher punishment for the robber."  Id. at 1361.

Lassend does not contest the fact that he was convicted under § 160.15(4).  Nor does he contest that his conviction shows that he intended to forcibly steal property.  That alone, he says, is not enough.[13]  He challenges the use of his conviction as an ACCA predicate on two aspects of the aggravating circumstances.

### i.   Display of What Appears To Be a Firearm

Lassend first argues that the display element of § 160.15(4) does not satisfy Johnson I's violent-force requirement because a defendant can display an item that is not actually dangerous.  He focuses his argument on the language "displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."  N.Y. Penal Law § 160.15(4) (emphasis added).  He says our decision in United States v. Starks, 861 F.3d 306 (1st Cir. 2017), requires that we rule in his favor.

Lassend is correct that, under New York law, an individual can violate § 160.15(4) by displaying an item that is not actually a firearm, but only appears to the victim to be such.[14]

---

[13]   Neither party disputes that the "forcibly steals property" element of § 160.15(4) does not satisfy Johnson I's violent-force requirement in light of our decision in United States v. Steed, 879 F.3d 440 (1st Cir. 2018).

[14]   A defendant charged under § 160.15(4) can present an affirmative defense that the firearm displayed "was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged."  This

- 25 -

There is a New York case suggesting that "[a] towel wrapped around a black object . . . , a toothbrush held in a pocket . . . [,] or even a hand consciously concealed in clothing" can satisfy the display element of § 160.15(4) "if under all the circumstances the defendant's conduct could reasonably lead the victim to believe that a gun is being used during the robbery." Lopez, 535 N.E.2d at 1331. "[I]t must appear to the victim by sight, touch or sound that he is threatened by a firearm." Baskerville, 457 N.E.2d at 756. What matters for § 160.15(4) is not whether the defendant's displayed item is actually capable of inflicting physical injury, but rather whether the defendant's actions cause the victim to be in reasonable fear of bodily harm.

Case law has long made it clear that display of what appears to be a weapon increases fear of bodily harm. Lassend's reliance on our decision in Starks does not work because that case involved the crime of Massachusetts armed robbery, which we found not to be a violent felony. See 861 F.3d at 320, 324. That crime does not require the defendant to use, or make the victim aware of the display of what appears to be a weapon. Id. at 320.

Our own case law requires rejection of Lassend's argument, as does the law of other circuits. In Ellison, we held

affirmative defense does not "constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime." Id.

- 26 -

that federal bank robbery is categorically a crime of violence under U.S.S.G. § 4B1.2(a), even though it can be committed "by intimidation," 18 U.S.C. § 2113(a). 866 F.3d at 33-34. Intimidation is shown through evidence that the defendant's actions "would, as an objective matter, cause a fear of bodily harm" in the victim. Id. at 37. Similarly, in United States v. Luna, 649 F.3d 91 (1st Cir. 2011), we held that Massachusetts armed robbery involving only "threatening words or gestures" satisfies the ACCA's force clause because it has "as an element the . . . attempted use[] or threatened use of physical force." Id. at 108 (alteration in original) (citing 18 U.S.C. § 924(e)(2)(B)(i)). In both cases, we focused on whether the victim reasonably perceived a threat of bodily harm, not on whether the defendant could have carried out that threat.

Case law from other circuits follows the same approach. The Fifth Circuit in United States v. Ovalle-Chun, 815 F.3d 222 (5th Cir. 2016), held that a conviction under the Delaware aggravated-menacing statute -- which is violated "when by displaying what appears to be a deadly weapon[, a] person intentionally places another person in fear of imminent physical injury," Del. Code Ann. tit. 11, § 602(b) -- qualifies as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1). Ovalle-Chun, 815 F.3d at 224, 226-27; see also Ledoue v. Att'y Gen., 462 Fed. App'x 162, 165-66 (3d Cir. 2011) (per curiam) (unpublished) (similar). In

doing so, the Fifth Circuit explicitly rejected the defendant's argument "that aggravated menacing does not involve physical force because it only requires that the victim have the perception that there is a weapon but does not require an actual weapon." Ovalle-Chun, 815 F.3d at 226.

The Sixth Circuit reached a similar conclusion in United States v. Gloss, 661 F.3d 317 (6th Cir. 2011), with respect to the Tennessee aggravated robbery statute, which covers

> "the intentional or knowing theft of property from the person of another by violence or by putting the person in fear," where that theft is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or . . . [w]here the victim suffers serious bodily injury."

Id. at 318 (alteration in original) (quoting Tenn. Code. Ann. §§ 39-13-401, 39-13-402).  The Sixth Circuit held that a conviction under the Tennessee statute qualifies as a violent felony under the ACCA's force clause because "[a]ny robbery accomplished with a real or disguised deadly weapon . . . falls under the first clause of the definition of violent felony, as it necessarily involves 'the use, attempted use, or threatened use of physical force against the person of another.'"  Id. at 319 (quoting 18 U.S.C. § 924(e)(2)(B)(i)).

ii.  Accomplice

Lassend next urges us to hold that a conviction under § 160.15(4) is not a violent felony under Leocal and Johnson I because the statute does not require a defendant to intend the use of violent force as to the display of a firearm.  In Leocal, the Supreme Court held that the phrase "use . . . of physical force against the person or property of another" in 18 U.S.C. § 16(a) "most naturally suggests a higher degree of intent than negligent or merely accidental conduct."  543 U.S. at 9.  Accordingly, the Court determined that a conviction under Florida's DUI statute -- which makes it a third-degree felony to operate a vehicle while under the influence and "by reason of such operation, caus[e] . . . [s]erious bodily injury to another," Fla. Stat. § 316.193(3)(c)(2) -- is not a crime of violence under § 16(a).  Leocal, 543 U.S. at 7-10.  Lassend contends that, under § 160.15(4), a defendant can be convicted of first-degree robbery if an accomplice displays a weapon without the defendant's knowledge.  Lassend argues that this means that § 160.15(4) does not require a level of intent "higher . . . than negligent or merely accidental conduct." Leocal, 543 U.S. at 9.

We reject Lassend's argument that the fact that a defendant can be convicted when an accomplice displays a firearm or what appears to be a firearm means that § 160.15(4) does not satisfy the ACCA's intent requirement under Leocal.

- 29 -

The ACCA defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B) (emphasis added).  This definition focuses on the elements of the crime of conviction, not on the particular act committed by the defendant or the circumstances of his conviction.  What matters for the force clause, then, is whether a felony's legal definition involves violent force, not whether a particular individual actually employed or intended to employ violent force in committing that felony.  In order for there to be a conviction under § 160.15(4), one of the offenders must have threatened the use of violent force.[15]  The force clause does not inquire into which offender in fact made that threat.

The Supreme Court addressed similar language in Dean v. United States, 556 U.S. 568 (2009).  That case concerned 18 U.S.C. § 924(c)(1)(iii), which provides a mandatory minimum sentence of 10 years to a person who uses or carries a firearm during and in

---

[15]    To the extent Lassend may be arguing that a defendant can be convicted where he unintentionally displays a weapon, he has waived that argument by failing to develop it.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  The argument would fail even if properly raised.  In order to sustain a conviction under § 160.15(4), the prosecution must show, inter alia, "that the defendant consciously displayed something that could reasonably be perceived as a firearm."  See, e.g., People v. Smith, 75 N.E.3d 84, 87-88 (N.Y. 2017) (emphasis added) (quoting Lopez, 535 N.E.2d at 1331).

relation to any violent crime or drug-trafficking crime, or possesses a firearm in furtherance of such a crime, "if the firearm is discharged." Dean, 556 U.S. at 572, 578 (citing 18 U.S.C. § 924(c)(1)(A)(iii)). The petitioner in that case argued that he could not be sentenced under that provision because he did not intend for the firearm to be discharged. Id. at 571. The Court rejected that argument, holding that § 924(c)(1)(A)(iii) did not impose an intent requirement as to the discharge of the firearm. Id. at 572-74. The Court reasoned that the phrase "if the firearm is discharged," "focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability." Id. at 572. From that, the Court determined that the statute was concerned with "whether something happened -- not how or why it happened." Id. The same logic applies here. The force clause focuses on the elements of the crime of conviction -- i.e., what acts occurred -- "without respect to any actor's intent or culpability." Id.

Our interpretation of the ACCA's force cause is consistent with that of the Second Circuit, which recently rejected an identical § 160.15(4) argument in Stuckey. It noted that "the intent and force requirements outlined in Leocal and [Johnson I] are examined separately." Stuckey, 878 F.3d at 70. It determined that (1) § 160.15(4) satisfies Leocal's requirement that a defendant have "a higher degree of intent than negligent or merely

- 31 -

accidental conduct," because the state is required to establish the defendant's intent to commit forcible stealing, id. at 71 (quoting Leocal, 543 U.S. at 9), and (2) that Johnson I's violent-force requirement is separately met by the statute's aggravating-circumstance element, id.

The Second Circuit began by acknowledging that the parties agreed that first-degree robbery under New York law required the display of a weapon "in the course of a robbery," which "well exceeds the degree of violent physical force the ACCA requires." Id. at 70. As explained above, we agree that § 160.15(4) meets the force requirement. The court reasoned that the intent requirement announced in Leocal was met because, in order to be convicted, "[t]he defendant must . . . actively and intentionally engage in the commission of the robbery -- precisely what Leocal requires . . . ." Id. at 71. Because § 160.15(4) requires as an element of the offense that there be a use of force or threatened use of force that is more than merely negligent, this case is distinguishable from Leocal, which involved a Florida reckless driving statute that did not require criminal intent. Id.

Indeed, our holding also comports with traditional accomplice-liability principles. As the Second Circuit noted, § 160.15(4) "reflects the principle of criminal law that a defendant may be held responsible for actions taken by an

accomplice to certain crimes." Stuckey, 878 F.3d at 70 (citing United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938); Francis Bowes Sayre, Criminal Responsibility for the Acts of Another, 43 Harv. L. Rev. 689, 702-04 (1930)). The government says it found one other case that supports this. See United States v. Young, 229 F. App'x 423, 424 (8th Cir. 2007) (per curiam) (unpublished) (noting that recognizing a distinction between "solo and group crimes" in evaluating whether an offense is a violent felony under the ACCA "would be inconsistent with the general principle that a person convicted as an accomplice is guilty of the same underlying offense as the principal").

The Supreme Court dealt with the culpability of principals and accomplices in Gonzales v. Duenas-Alvarez, 549 U.S. 183 (2007). In that case, the Court applied the categorical approach to determine whether aiding and abetting a vehicle theft offense under California law was a generic theft offense for the purposes of 8 U.S.C. § 1101(a)(43)(G). Duenas-Alvarez, 549 U.S. at 185. The California statute in that case stated in relevant part that "any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing [of a vehicle], is guilty of a public offense. Cal. Veh. Code Ann. § 10851(a) (emphasis added). The Ninth Circuit had held that § 10851(a) was not a generic theft offense because "generic theft has as an element the taking or control of others' property" and

- 33 -

the Ninth Circuit "believed that one might 'aid' or 'abet' a theft without taking or controlling property." Duenas-Alvarez, 549 U.S. at 188 (citing Penuliar v. Ashcroft, 395 F.3d 1037, 1044-45 (9th Cir. 2005)).

The Court, in reversing the Ninth Circuit, recognized that "every jurisdiction -- all States and the Federal Government -- has 'expressly abrogated the distinction'" between principals, aiders and abettors present at the scene of a crime, and accessories before the fact. Id. at 189-90 (quoting 2 W. LaFave, Substantive Criminal Law § 13.1(e), at 333 (2d ed. 2003)). Given that accomplices are to be treated the same as principals for the purposes of state and federal law, it is perfectly natural that § 160.15(4) holds a defendant responsible when a fellow robbery participant displays a weapon.

The government draws a similar analogy to the felony murder rule. In Dean, the Court observed that:

> It is unusual to impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequences of their unlawful acts. See 2 W. LaFave, Substantive Criminal Law § 14.4, pp. 436-437 (2d ed. 2003). The felony-murder rule is a familiar example: If a defendant commits an unintended homicide while committing another felony, the defendant can be convicted of murder. See 18 U.S.C. § 1111.

Dean, 556 U.S. at 575. The Court also noted that 18 U.S.C. § 924(c)(1)(A)(iii)

- 34 -

accounts for the risk of harm resulting from the manner in which the crime is carried out, for which the defendant is responsible. An individual who brings a loaded weapon to commit a crime runs the risk that the gun will discharge accidentally. A gunshot in such circumstances -- whether accidental or intended -- increases the risk that others will be injured, that people will panic, or that violence (with its own danger to those nearby) will be used in response. Those criminals wishing to avoid the penalty for an inadvertent discharge can lock or unload the firearm, handle it with care during the underlying violent or drug trafficking crime, leave the gun at home, or -- best yet -- avoid committing the felony in the first place.

Dean, 556 U.S. at 576 (citation omitted). Similarly, an individual who commits first-degree robbery with an accomplice "runs the risk," id., that the accomplice will employ or threaten violent force to facilitate the robbery. And when such violent force is actually employed or threatened during the robbery, "the risk of harm resulting from the manner in which the crime is carried out," id., increases, and all participants in the crime are fairly burdened with enhanced sentences under the ACCA.[16]

---

[16]    In line with Dean, many circuits have explained that it is typical to hold defendants accountable for the unintended consequences of intentional criminal acts. See, e.g., United States v. McDuffy, 890 F.3d 796, 802 (9th Cir. 2018) (holding that there is "no need to read a mens rea requirement" into 18 U.S.C. § 2113(e), which punishes criminals for killing someone in the course of a bank robbery, because "[c]ommitting the basic crime of bank robbery is already wrongful conduct"); United States v. Burwell, 690 F.3d 500, 502, 507 (D.C. Cir. 2012) (en banc) (holding that there is no need to read a mens rea requirement into 18 U.S.C. § 924(c)(1)(B)(ii), which imposes a mandatory minimum sentence of 30 years' imprisonment for an individual who carries a machine gun

The intent requirement for conviction as an accomplice or accessary can vary by crime and jurisdiction. Compare Rosemond v. United States, 134 S. Ct. 1240, 1243 (2014) (holding that, under federal law, to prove aiding and abetting the crime of using or carrying a firearm during a crime of violence, the government must prove "that the defendant actively participated in the underlying [crime] . . . with advance knowledge that a confederate would use or carry a gun during the crime's commission") with Miller, 661 N.E.2d at 1363 (holding that strict liability attaches to the aggravating circumstances under New York Penal Law § 160.15). When Congress passed the ACCA, it was presumably aware that various states imposed vicarious liability under certain criminal laws. Congress made no attempt to exclude convictions under such laws from the force clause.

If Congress had desired to preclude convictions from qualifying as ACCA predicates where the defendant acted as an accomplice and did not intend the principal's use of force, it would have done so clearly. Congress could have included an

---

while committing a crime of violence because, inter alia, it is not "unusual to punish individuals for the unintended consequences of their unlawful acts"); United States v. Taylor, 659 F.3d 339, 343-44 (4th Cir. 2011) (upholding the validity of U.S.S.G. § 2k2.1(b)(4)(A) -- which increases a defendant's offense level by two points if a firearm involved in a § 922(g) offense was stolen, regardless of whether the defendant knew or had reason to believe that the firearm was stolen -- because "[a]n unlawful course of conduct inevitably carries its share of risks").

express intent requirement in the ACCA's force clause, as it did in other subsections of 18 U.S.C. § 924. See, e.g., 18 U.S.C. § 924(a)(1), (a)(2), (a)(3), (a)(5), (a)(6)(B), (a)(7), (b), (d)(1), (f), (h), (i)(1), (k); see also Dean, 556 U.S. at 572-73 (refusing to read an intent requirement into 18 U.S.C. § 924(c)(1)(A)(iii) in part because "Congress expressly included an intent requirement" for the preceding subsection, 18 U.S.C. § 924(c)(1)(A)(ii) (citing Russello v. United States, 464 U.S. 16, 23 (1983))).

For these reasons, we hold, consistent with the Second Circuit, that § 160.15(4) meets the requirements of Leocal and Johnson I. First, § 160.15(4)'s display element independently meets Johnson I's violent-force requirement. Second, § 160.15(4) does not criminalize the type of "negligent or merely accidental conduct" that Leocal discussed, 543 U.S. at 9, because a weapon must be consciously displayed during forcible stealing to violate § 160.15(4). Hence, a conviction under § 160.15(4) is a violent felony under the ACCA's force clause.

### III. Conclusion

Because three of Lassend's convictions qualify as violent felonies under the ACCA's force clause,[17] we affirm the district court's dismissal of his § 2255 petition.

---

[17] Because we have determined that three of Lassend's convictions qualify as ACCA predicates, we need not decide whether

- 37 -